**Stephanie Cora (Wallace)**
**MANNS, Appellant,**

v.

**Michael Scott CHAPMAN, Respondent.**

**No. WD 55714.**

Missouri Court of Appeals,
Western District.

March 9, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1999.

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, p.    463 (1978).

Anita I. Rodarte, Kansas City, for Appellant.

Steve D. Burmeister, Independence, for Respondent.

Before SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Stephanie Manns appeals the judgment of the circuit court modifying its prior decree of dissolution of marriage by changing physical custody of her son, Seth Wallace–Chapman, from her to his father, the respondent, Michael Scott Chapman.

The appellant raises four points on appeal. She claims that the trial court erred in modifying physical custody of Seth because: (1) she did not receive notice of her right to file a responsive pleading or the date of hearing; (2) the court did not appoint a guardian *ad litem* (GAL), as required by § 452.423;[1] (3) the evidence was insufficient to establish, *inter alia,* that there had been a substantial and continuing change of circumstances and that modification was in the best interests of the child, as required by § 452.410 to modify custody; and (4) there was no meaningful review by the circuit judge of the family law commissioner's findings and recommendations, as required by § 487.030.

We reverse and remand.

**1.** All statutory references are to RSMo 1994,

## Facts

The marriage of the appellant and the respondent was dissolved on August 13, 1992, pursuant to a decree of dissolution of marriage entered in the Circuit Court of Jackson County. In its decree, the circuit court, *inter alia,* granted physical custody of Seth to the appellant, with supervised visitation to the respondent, and ordered the respondent to pay child support in the amount of $150 per month.

In January 1993, without permission from the court or notice to the respondent, the appellant moved with Seth to Texas, refusing to disclose his whereabouts to the respondent. In January 1996, the respondent learned that Seth was staying with his maternal great-grandmother in Independence, Missouri. As a result, he filed a motion to modify physical custody and for temporary custody in the Circuit Court of Jackson County. The motion for temporary custody was sustained on January 31, 1996, by Family Court Commissioner Sherrill Rosen.

On February 1, 1996, the appellant filed a motion to dismiss the respondent's motion to modify and to set aside the order for temporary custody. On February 7, 1996, Commissioner Rosen set aside her order for temporary custody and ordered that physical custody of Seth be returned to the appellant with respondent awarded compensatory visitation for the visitation he missed while the child was residing in Texas with the appellant. The appellant then filed her answer to the respondent's motion for modification and a counter-motion for increased child support and for contempt for failure to pay child support. The respondent, in turn, filed an application for contempt for the appellant's moving the child to Texas without court order or his permission. These motions were heard together by Commissioner Rosen on March 28 and 29, 1996. At the hearing the appellant made an oral motion for permission to move to Texas with Seth.

unless otherwise indicated.

On April 3, 1996, Commissioner Rosen entered her findings and recommendations wherein she: (1) overruled the respondent's motion to modify; (2) overruled the appellant's oral motion for permission to relocate with the child to Texas and ordered the appellant to return with him to Missouri, granting specific, unsupervised visitation to the respondent; (3) sustained the appellant's motion for increased child support, ordering child support of $311 per month; and (4) sustained the respondent's motion for contempt, ordering the appellant committed to the Jackson County Department of Corrections with a stay of the commitment to allow her an opportunity to purge herself of contempt by providing the respondent with a compensatory period of visitation. Although the parties were advised that either could file a motion for rehearing by a judge of the circuit court, neither sought rehearing.

Upon the appellant's return to Missouri, the respondent began exercising his court-ordered visitation with Seth. In July 1996, upon Seth's return from one such visitation, the appellant noticed a bruise on his arm. The appellant reported the bruise to the Buckner Police Department, which in turn initiated a hotline abuse complaint to the Division of Family Services (DFS). Approximately one week later, the appellant noted bruises on Seth's legs after his return from a visit with his father. The appellant again reported this to the Buckner Police Department, which initiated another hotline abuse complaint to DFS.

The hotline abuse reports were investigated by Terri Reynolds, a DFS child abuse and neglect investigator. Reynolds instructed the appellant to allow the respondent only supervised visitation, until her investigation of the alleged abuse was completed. After completing her investigation, Reynolds determined that there was probable cause to believe that the respondent had abused Seth. Because abuse was substantiated, DFS procedure required that the case be transferred to another DFS caseworker, Greg Wilson, to establish services. Reynolds advised the parties in a letter of the outcome of her investigation and that unsupervised visitation between the respondent and Seth could resume upon receipt of her written report. However, the appellant, allegedly acting on the instruction of Wilson, refused to allow unsupervised visitation.

On October 4, 1996, as a result of being denied unsupervised visitation, the respondent filed his "Application for Contempt and Show Cause and Motion for Modification of Custody, Child Support, Attorney's Fees and Costs" in the Circuit Court of Jackson County. As the basis for his motion to modify custody, the respondent alleged that the appellant had failed to allow him unsupervised visitation with Seth and had filed, without just cause, hotline abuse reports in order to interfere with his court-ordered visitation. On October 7, 1996, Commissioner Rosen entered her "Order to Show Cause," ordering the appellant to appear on November 18, 1996, to show cause why she should not be held in contempt of court for failure to comply with her order of April 3, 1996. The respondent's motion for modification of custody was attached to and incorporated in the show cause order. The appellant was served with the order to show cause and the respondent's motion on October 9, 1996.

On November 18, 1996, both the appellant and the respondent appeared before Commissioner Rosen. Both parties presented evidence as to whether: (1) the appellant had deprived the respondent of his visitation rights; (2) the respondent had abused Seth; (3) there had been a substantial change of circumstances warranting a change of custody; and (4) it was in the best interests of the child to change his physical custody to the respondent. In her closing argument, the appellant for the first time requested that a GAL be appointed to represent Seth's interests in the proceedings, based on claims of abuse.

On November 22, 1996, Commissioner Rosen entered her "Judgment Entry" sus-

taining the respondent's motion to modify, changing physical custody of Seth to the respondent, and for contempt, with the portion of the judgment as to contempt being subsequently set aside. On December 6, 1996, the appellant filed a motion for rehearing before a circuit judge and a motion to set aside the commissioner's "judgment." On January 3, 1997, the Honorable J.D. Williamson denied her motion for rehearing. On January 6, 1997, Commissioner Rosen denied the appellant's motion to set aside the "judgment." The appellant filed an appeal with this court which was denied for a lack of jurisdiction because no final appealable judgment had been entered by a circuit judge. *Chapman v. Chapman*, 967 S.W.2d 660, 661 (Mo.App.1998). Thereafter, on April 7, 1998, the Honorable W. Stephen Nixon entered a judgment, adopting the findings and recommendations of Commissioner Rosen as the final judgment of the circuit court.

This appeal follows.

### Standard of Review

■ In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Dent v. Dent,* 965 S.W.2d 230, 235 (Mo.App.1998) (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. *banc* 1976)). However, "[g]reater deference is accorded to the determination of a trial court on custody matters than in other cases." *Mills v. Mills,* 939 S.W.2d 72, 75 (Mo.App.1997).

### I.

Inasmuch as our resolution of appellant's Point II is dispositive of her appeal, we address it alone.

■ In her Point II, the appellant claims that Commissioner Rosen erred in failing to appoint a GAL to represent the interests of Seth because she was required to do so pursuant to § 452.423 in that there were sufficient allegations of child abuse raised by the evidence in the proceeding to trigger the statutory requirement to appoint. Her claim has two subpoints. In subpoint A, she claims that, even though she did not expressly plead abuse or neglect, as required by the statute as a condition precedent to the appointment of a GAL, the appointment of a GAL was still mandated because this condition precedent should not apply where there is no duty to file a pleading, such as in her case. In subpoint B, she claims that, even if this condition precedent applied, the appointment of a GAL was still statutorily mandated because the evidence at trial relating to abuse was such that the commissioner was required to order *sua sponte* the pleadings amended to conform to the evidence and appoint a GAL. Because the appellant's claim in subpoint B is dispositive of her appeal, we address it alone.

■ The determination of whether a GAL should be appointed in a particular case is governed by § 452.423.1, which provides, in pertinent part, as follows:

In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

Generally, the appointment of a GAL is discretionary with the trial court. *Mills,* 939 S.W.2d at 74. However, pursuant to § 452.423.1, when child abuse or neglect is alleged, the appointment of a GAL is mandatory even if neither party requests it. *McNeely v. McNeely,* 935 S.W.2d 103, 104 (Mo.App.1996). A GAL is appointed as the legal representative of the child to ensure that the court has sufficient information and to see that the child's interests are protected. *Baumgart v. Baumgart,* 944 S.W.2d 572, 578 (Mo.App.1997).

The issue presented in the appellant's subpoint B was addressed by the Missouri Supreme Court in *Rombach v. Rombach*, 867 S.W.2d 500 (Mo. *banc* 1993). There the court held that the mandatory appointment of a GAL pursuant to § 452.423 is triggered only where express allegations of abuse or neglect are made in the pleadings and not by the mere introduction of evidence at trial. *Id.* at 503. In so holding, the court emphasized that the word "allegation," rather than "evidence," was used in the statute, evincing a legislative intent that the appointment of a GAL was not required unless abuse and neglect was "alleged" in a formal pleading. *Id.* at 502–03. However, the court, relying on Rule 55.33(b),[2] governing amendment of pleadings to conform to the evidence at trial, and recognizing that, in matters of possible abuse or neglect of children, the focus must be the best interests of the children, went on to hold that:

> In matters involving the possible abuse or neglect of children, the attention of the trial court must be intensely directed to their protection. If sufficient evidence exists that, if believed, shows actual abuse or neglect occurred, the court, either upon motion of a party or *sua sponte*, should order the pleadings amended to conform to the evidence and appoint a guardian ad litem. Although such a ruling should not be made lightly, the trial court must always keep first in mind the interests of the children, because they are least able to protect themselves. Should such a ruling threaten either parent with prejudice, a continuance is the proper remedy.

*Id.* at 504 (emphasis in original). After *Rombach*, it was clear that the appointment of a GAL under § 452.423 was only mandated where abuse or neglect was actually pled, unless the *sua sponte* amendment-of-pleadings exception applied.

Given the holding in *Rombach*, in determining whether Commissioner Rosen was required to appoint a GAL, we must first look to the pleadings in the case to determine whether abuse or neglect was actually alleged. The respondent in his motion to modify custody made no allegations of abuse or neglect, and the appellant did not file a responsive pleading. As such, no abuse or neglect was alleged by the parties in any pleadings filed. Thus, *based solely on the pleadings in the case*, Commissioner Rosen was not required to appoint a GAL pursuant to § 452.423. *Id.* at 503. This, however, does not end our inquiry. Pursuant to *Rombach*, in resolving the issue presented, we still must determine whether there was sufficient evidence of abuse or neglect presented at the hearing which required the commissioner to order *sua sponte* the pleadings amended to allege the same and appoint a GAL pursuant to § 452.423.

In *Rombach*, the court recognized the fact that "abuse" and "neglect" were not defined in § 452.423. *Id.* at 504. However, in determining whether there was sufficient evidence of abuse or neglect to trigger a *sua sponte* amendment of the pleadings to allege the same, the court approved the definitions of those terms, as found in chapter 210. *Id.* In chapter 210, child "abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control." § 210.110(1). "Neglect" is defined as the "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being." § 210.110(8). Utilizing these definitions, we turn to the record to determine whether the evidence presented was sufficient to have required the commissioner to order *sua sponte* the pleadings amended to allege abuse or neglect.

---

**2.** All rule references are to the Missouri Rules of Civil Procedure, unless otherwise indicated.

The appellant testified as to two occasions on which she observed bruises on Seth after he returned home from visits with the respondent. On the first occasion, she observed a severe bruise on his arm. On the second occasion, she observed bruises on his leg in the pattern of fingerprint marks. As to these occasions, she stated that Seth told her that the respondent had pinched him. On the issue of abuse, she also introduced the testimony of the DFS investigator, Reynolds, who testified as to the hotline reports received and her investigation of the alleged abuse of Seth by his father. Reynolds testified that her investigation led to a finding of probable cause to believe that Seth had been physically abused by the respondent. In her report, she noted that Seth had indicated that his father had pinched and hit him when he misbehaved. The report indicated that the respondent denied that he had in any way caused the bruising in question. There was no objection made to the admission of this evidence at trial. This evidence was sufficient to raise the issue of whether Seth was abused by the respondent, as defined in § 210.110(1). This then required Commissioner Rosen to amend *sua sponte* the pleadings to allege abuse and should have triggered the appointment of a GAL, *Rombach*, 867 S.W.2d at 504, which the commissioner failed to do, requiring us to reverse and remand for rehearing as to the respondent's motion to modify custody.

### Conclusion

The judgment of the circuit court, adopting the findings and recommendations of the family law commissioner and changing the custody of the minor child from the appellant to the respondent, is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.